UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VFS LEASING CO.,

     Plaintiff,

v.                          Case No. 8:21-cv-1297-TPB-JSS

MARKEL AMERICAN INSURANCE
COMPANY,

     Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on "Defendant, Markel American Insurance Company's, Amended Motion to Dismiss or Alternatively, Motion for Summary Judgment" (Doc. 59), filed on March 10, 2022, and "Plaintiff VFS Leasing Co.'s Amended Combined Response to Markel American's Motion for Summary Judgment and Cross-Motion for Summary Judgment" (Doc. 64), filed on April 1, 2022. Each side filed responses in opposition. (Docs. 64; 66). Plaintiff filed a reply. (Doc. 67). Upon review of the motions, responses, reply, court file, and the record, the Court finds as follows:

## Introduction

This case presents a somewhat regularly occurring legal issue concerning two-party checks under Article III of the Uniform Commercial Code ("UCC"): whether cashing a two-party check by one copayee, without the knowledge, involvement, or endorsement of the other copayee, discharges the party that issued the check from its liability on the check and any underlying contractual obligation. Although this is

clearly a UCC issue, the various jurisdictions that have dealt with it have not followed a uniform approach, and a split of authority has developed.  It appears the Florida state appellate courts have not yet decided this issue.

### Background

The material facts are straightforward and largely undisputed.  In 2016, 2017, and 2018, Plaintiff VFS Leasing Co. ("VFS") owned and leased various tractors to non-party Time Definite Leasing, LLC ("TDL").  The "tractors" leased by VFS were the powered motor vehicle portions of semi-trailer trucks, commonly known in the United States as "eighteen wheelers."[1]  VFS chose not to purchase insurance for the tractors it leased to TDL.  Instead, VFS required TDL to purchase insurance for each tractor and name VFS as an additional insured and loss payee on the insurance policies.  VFS required this in an attempt to make sure it would be compensated if any of the tractors it leased to TDL were damaged or destroyed.  TDL purchased the required insurance coverage from Defendant Markel American Insurance Company ("Markel"); insurance contracts existed between those two entities.[2]

Five of the VFS tractors leased to TDL were damaged or destroyed, and TDL submitted five insurance claims to Markel.  Markel attempted to pay the claims by sending two-party checks to TDL, made out to *both* VFS and TDL as copayees.  VFS

---

[1] "A semi-trailer truck, also known as a semitruck, (or semi, eighteen-wheeler, or, by synecdoche, a semitrailer) is the combination of a tractor unit and one or more semi-trailers to carry freight." *See* Semi-trailer truck, Wikipedia, https://en.wikipedia.org/wiki/Semi-trailer_truck (May 31, 2022).

[2] The parties dispute whether VFS was an "additional insured" under the policies at issue, as opposed to a "loss payee."  From a review of the policies, it appears that VFS was not an additional insured but instead listed only as a loss payee. (Docs. 64-2; 66-1, 66-2).  However, the fact that VFS was not an additional insured is not material to the analysis required to decide this motion.

had no knowledge Markel sent checks to TDL.

Although Markel's checks were made payable to *both* TDL and VFS, TDL was able to cash the checks without VFS' knowledge, involvement, or approval.  TDL kept all the proceeds from the checks and subsequently entered bankruptcy.  Although VFS was validly named as either an additional insured or a loss payee on various insurance policies, and Markel issued payment for valid claims made on those policies, VFS has received nothing.

VFS filed this lawsuit in state court on April 2, 2021, bringing a single count against Markel seeking accounting.[3]  The case was subsequently removed to this court and VFS later filed an amended complaint consisting of a single breach of contract count.  VFS contends that Markel breached its insurance contracts by failing to pay valid claims in the amount of $573,404.32.  Markel contends that it satisfied its contractual obligations by sending two-party checks to TDL, made out to *both* VFS and TDL as copayees, so it owes VFS nothing.  Markel further argues that VFS' remedy is with TDL, the bank that may have improperly cashed the two-party checks, or both.  Resolution of this dispute is controlled by the UCC, as adopted by Florida.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty*

---

[3] The original suit was filed against Defendant Markel Insurance Company.  Markel American Insurance Company was added as a defendant in the amended complaint (Doc. 29), and Markel Insurance Company was terminated as a defendant (Doc. 52).

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment.  *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration.  *Id.*  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

**Analysis**

Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). To prevail on a breach of contract claim, a plaintiff must also demonstrate that any asserted affirmative defenses are legally deficient or lack record support.

The parties do not dispute the existence of valid insurance contracts issued by Markel to TDL, and neither party disputes the authenticity of the relevant insurance policies. (Docs. 64-2; 66-1, 66-2). Although Markel argues otherwise, as a loss payee, VFS has standing to assert a breach of contract claim against Markel. *See DeMay v. Dependable Ins. Co.*, 638 So. 2d 96, 97 (Fla. 2d DCA 1994) ("A loss payee clause has been construed to confer upon the loss payee third-party beneficiary standing to bring an action against the insurer."); *Leasing Service Corp. v. American Motorists Ins. Co.*, 496 So. 2d 847, 849 (Fla. 4th DCA 1986) (holding that loss payee has standing to sue for proceeds as a third-party beneficiary of an insurance policy). As such, the Court finds that VFS has established the existence of valid contracts and its standing to bring suit under the contracts.

VFS alleges that Markel materially breached the terms of the insurance policies by failing to pay five insurance claims to VFS as a loss payee. To support its claim, VFS has attached copies of the proofs of loss submitted to Markel, copies of the checks issued jointly to TDL and VFS, and an affidavit from a corporate representative reflecting that VFS did not receive or negotiate any of the issued checks and did not receive any payments. VFS argues that the two-party checks issued by Markel did not

satisfy Markel's contractual obligation to pay because the two-party checks were improperly cashed by TDL without VFS' knowledge, involvement, or consent and, at the end of the day, VFS got none of the insurance money Markel was obligated to pay. Markel argues that it satisfied its contractual obligations because it issued the checks jointly to VFS and TDL, and TDL cashed the checks.

The parties agree that the checks issued by Markel are negotiable instruments governed by Article III of the UCC.  As such, Florida's codification of the UCC, found at Chapter 673 of the *Florida Statutes*, governs the outcome of this case.  The parties argue that various Florida opinions address the issue presented here, but the Court disagrees.  No Florida court has squarely addressed whether the cashing of a two-party check by one copayee who is not the agent of the other copayee, without the knowledge, involvement, or endorsement of the other copayee, discharges the party that issued the check from its liability on the check and any underlying contractual obligation.[4]  This is unfortunate because courts that have confronted this issue in other parts of the country have come out differently when applying identical or nearly identical UCC provisions as Florida's to nearly identical facts.  As a result, a split of authority exists on this issue of supposedly uniform commercial law.[5]

One approach, that favors Markel, holds that when a party with a contractual

---

[4] Markel relies heavily on *Hyatt Corp. v. Palm Beach Nat'l Bank*, 840 So.2d 300 (Fla. 3d DCA 2003) in support of its position.  However, *Hyatt* concerned a check that was made out to alternative payees, not, as here, a check made out to joint copayees. *Id.*  As such, it does not address the same UCC issue presented here.

[5] The precise text of the UCC provisions adopted by the different states sometimes differs slightly from the actual text of the UCC itself.  These slight differences in wording do not explain different outcomes on the same issue, applying the same uniform statute, under virtually identical facts.

obligation to pay delivers a two-party check to one of two copayees, and the copayee cashes the check without the knowledge, involvement, or endorsement of the other copayee, that party cannot be held liable on its contractual obligation because the law deems the obligation discharged when the check is delivered and cashed by the copayee, or at least suspended until the check is properly paid or dishonored, neither of which occurs in this situation.  Courts also reason that the unpaid copayee cannot recover on the check itself under the UCC because the check is not lost or in the possession of an unknown person, as required for a suit by someone not in possession of an instrument.   Relying on UCC Article III provisions similar or identical to Florida's, some courts in California, Idaho, Illinois, Indiana, Kentucky, and Minnesota have followed this approach.[6]

A different approach, which favors VFS, holds that the cashing of a two-party check by one copayee, without the knowledge, involvement, or endorsement of the other copayee, does *not* discharge the party that issued the check from its liability on the check or on any underlying contractual obligation.  The unpaid copayee is therefore entitled to bring an action for breach of contract against the party with the contractual obligation to pay, or a suit on the check itself under the theory that the check is lost, or under both theories.  Relying on UCC Article III provisions similar or

---

[6] *See, e.g., Parkway Bank & Tr. Co. v. State Farm Fire & Cas. Co.*, 990 N.E.2d 1202, 1207-08 (Ill. App. Ct. 2013); *Deutsche Bank Nat'l Tr. Co. v. Regions Bank*, No. 12-2436, 2013 WL 192993, at *2 & n.2 (E.D. La. Jan. 17, 2013); *Northeast Bank v. Wells Fargo Bank, N.A.*, No. 11-3233 (JNE/JJG), 2012 WL 2721635, at *2-3 (D. Minn. July 9, 2012); *Graves v. Johnson*, 862 N.E.2d 716, 721-22 (Ind. Ct. App. 2007); *Jones v. Christian Cty. Sch. Emp. Fed. Credit Union*, No. 2002-CA-001635-MR, 2004 WL 102795, at *3-4 (Ky. Ct. App. Jan. 23, 2004); *Reynolds v. Shoemaker*, 83 P.3d 135, 138 (Ct. App. Idaho 2003); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d 1129, 1141-45 (C.D. Cal. 1998).

identical to Florida's, courts in California, Georgia, North Dakota, Massachusetts, and Texas have followed this approach.[7]

After analyzing the various cases on this UCC issue, it becomes clear that the law on this point is, at best, inconsistent and certainly not uniform.[8]  Because Florida appellate courts have not yet dealt with this issue, it is necessary for this Court to determine which approach a Florida state court would follow on this issue of "uniform" commercial law.  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (federal courts sitting in diversity are directed to "apply the choice of law rules for the state in which it sits.").

To correctly adjudicate the issue presented here, it is necessary to carefully analyze a variety of somewhat technical UCC Article III concepts, including the meaning of "acceptance" (§ 673.4091, *F.S.*), "dishonor" (§ 673.5021 *F.S.*), "presentment" (§ 673.5011, *F.S.*), and "payment or acceptance by mistake" (§ 673.4181 *F.S.*), as well as provisions governing the "effect of instrument on obligation for which taken"

---

[7] *See, e.g.*, *McAllen Hosps., L.P. v. State Farm Cnty. Mut. Ins. Co. of Texas*, 433 S.W.3d 535, 539 (Tex. 2014); *Impac Funding Corp. v. Amica Mut. Ins. Co.*, No. 1:12-CV-873-RWS, 2013 WL 1136860, at *5-6 (N.D. Ga. Mar. 18, 2013); *State ex rel. N.D. Hous. Fin. Agency v. Ctr. Mut. Ins. Co.*, 720 N.W.2d 425, 429-30 (N.D. 2006); *Crystaplex Plastics, Ltd. v. Redevelopment Agency of the City of Barstow*, 92 Cal Rptr. 2d 197, 201-04 (Ct. App. Cal. 2000); *Gen. Motors Acceptance Corp., v. Abington Cas. Ins. Co.*, 602 N.E.2d 1085, 1087-89 (Mass. 1992).

[8] In some instances, the lack of uniformity manifests itself within the same state and even within the same case.  *Compare Bank of Am. Nat'l Tr. & Savings Ass'n*, 29 F. Supp 2d at 1140, 1144-45 (rejecting action on underlying contract or on instrument) *with Crystaplex Plastics,* 92 Cal Rptr. 2d at 202-04 (allowing action on instrument).  In *Northeast Bank v. Wells Fargo Bank*, No. 11-3233 (JNE/JJG), 2012 WL 13027972, at *4-5 (D. Minn. Feb. 27, 2012), a magistrate judge allowed a copayee to amend its complaint to assert a claim on the check.  A few months later, the district judge granted the defendant's motion to dismiss both the claim on the check and the claim on the contract, rejecting the plaintiff's argument that the magistrate judge's decision was law of the case.  *See Northeast Bank*, 2012 WL 2721635, at *2-4, n.4.

(§673.3101, *F.S.*) and "enforcement of lost, destroyed, or stolen instrument" (§ 673.3091, *F.S.*), among others.  Of particular note is § 673.1101(4), *F.S*, which includes the same language as § 3-110(d) of the UCC:

> If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.

Admittedly, this UCC provision does not directly address the issue presented here, but the comment to this section of the UCC seems to support the notion that an underlying contractual obligation would not be discharged where, as here, a joint payee improperly cashes a two-party check.  The Texas Supreme Court thought as much and cited the UCC Comment in support of this proposition in *McAllen*, 433 S.W. 3d at 539.  The Texas Supreme Court also pointed out in *McAllen* that a "well-respected legal treatise," 28 *Williston on Contracts* § 72:36 (4th ed. 2003), viewed its approach – as compared to the approach of the courts cited in footnote 6 above – as "the better view."  *Id*. at 540.

After thoroughly analyzing both approaches, and carefully considering the specific provisions of the applicable *Florida Statutes*, the Court finds that under Florida law, the cashing of a two-party check by one copayee, without the knowledge, involvement or endorsement of the other copayee, does not discharge the party that issued the check from its liability on the check and any underlying contractual

obligation.[9]  This interpretation of the UCC is consistent with the approach of the courts in Texas, North Dakota, Georgia, Massachusetts and California.  Under the facts presented here, Florida law allows VFS to bring a claim for breach of contract against Markel.  VFS has done so and established a material breach of the insurance contracts due to non-payment.

In support of its claim for damages, VFS has submitted copies of proofs of loss, copies of the checks issued by Markel, and an affidavit from a corporate representative reflecting that VFS did not receive or negotiate the checks, and it did not receive any payments.  Markel has not provided any evidence to create a genuine dispute of material fact as to damages.  As such, the Court concludes that VFS has met its burden in establishing damages in the amount of $573,404.32.[10]

The Court notes that none of Markel's affirmative defenses preclude the entry of judgment in favor of VFS.  Markel's first affirmative defense – that this action is

---

[9] At the hearing on this motion, Markel argued that the Florida UCC provision on this point differs from the UCC provisions in other jurisdictions.  It seems that this argument is based on the premise that Florida permits a payee to sue a financial institution for conversion under certain circumstances.  *See* § 673.4201, *F.S.*  However, it appears that this Florida statute adopted a UCC provision, and it is certainly not unique to Florida.  *See* UCC § 3-420.  Furthermore, even if Florida law provides an additional distinct remedy against a bank, there is no reason to conclude this would be VFS's exclusive remedy.

[10] VFS has sued Markel on its contract, not on the check.  It is arguable that an unpaid copayee such as VFS is required to sue on the instrument itself, not on the contract.  *See* § 673.3101(2)(d), *F.S.* ("If the obligee is the person entitled to enforce the instrument but no longer has possession of it because it was lost, stolen, or destroyed, the obligation may not be enforced to the extent of the amount payable on the instrument, and to that extent the obligee's rights against the obligor are limited to enforcement of the instrument.").  As the final judgment in this case would be identical whether based on the contractual obligation or on the instrument, the Court finds that requiring VFS to amend its pleadings to address this potential technical issue is unnecessary and inconsistent with Rule 1, Fed. R. Civ. P. which mandates that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

barred by § 627.4136(1), *F.S.* – lacks merit.  *See Hazen v. Allstate Ins. Co.*, 952 So. 2d 531, 538 (Fla. 2d DCA 2007) ("By its terms, the nonjoinder statute applies only to a cause of action which is covered by a liability insurance contract i.e., a tort action.").[11] The third affirmative defense – that VFS lacks standing – is also deficient.  *See DeMay*, 638 So. 2d at 97.  The remainder of Markel's affirmative defenses are variations of its argument that it has satisfied its contractual obligations by issuing joint checks to TDL and VFS.  For the reasons discussed above, these defenses are unavailing and do not warrant further comment.  Finally, to the extent that Markel argues VFS was "too late" in bringing its claims due to a contractually imposed limitations period, this argument was waived because it was not raised as an affirmative defense but was instead first asserted in a response filed in opposition to summary judgment.  (Doc. 66).  Even if this argument had not been waived, Florida law provides that "[a]ny provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void." § 95.03, *F.S.*  The applicable statute of limitations for a breach of contract claim is five years – not a shorter contractually imposed period – and this claim was brought within that five-year time-period.  *See* § 95.11(b), *F.S.*

---

[11] "An injured person has no beneficial interest in the wrongdoer's liability policy until a judgment is entered against the insured.  The legislative intent behind the statute is to ensure that the availability of insurance has no influence on the jury's determination of the insured's liability and damages." *General Star Indem. Co. v. Boran Craig Barber Engel Const. Co, Inc.*, 895 So. 2d 1136, 1138 (Fla. 2d DCA 2005).  In this case, VFS already has a beneficial interest in the insurance policies as a loss payee, and the possible impact of the availability of insurance on a jury is not a potential issue.

## **Conclusion**

VFS has submitted sufficient evidence to support its breach of contract claim, and Markel's affirmative defenses do not preclude summary judgment.  As such, based on the undisputed material facts, the Court concludes that VFS is entitled to summary judgment on Count I of the amended complaint.

The Court certainly understands Markel's frustration – after all, what occurred after the checks were issued was beyond Markel's control.  However, existing Florida law requires negotiable instruments payable to two parties jointly to be negotiated, discharged, or enforced only by all of them.  § 673.1101(4), *F.S.*  "To protect the rights of all joint payees as well as the integrity of the commercial paper itself," courts interpreting similar or identical provisions of the UCC have held that payment to one copayee without the endorsement of the other does not discharge the party that issued the check from its liability on the check and any underlying contractual obligation.

But, of course, Markel should not be forced to pay twice for the same contractual obligation.  Instead, Markel is free to seek recovery of its losses from the bank that improperly cashed the two-party check.  *See, e.g.*, *Impac Funding Corp.*, 2013 WL 1136860, at *7; *Gen. Motors Acceptance Corp. v. Abington Cas. Ins. Co.*, 413 Mass. 583, 589 (1992).  Although it is regrettable that this interpretation of the UCC may result in "circuitous litigation," the loss should ultimately "fall on the drawee bank who was in the best position to prevent the error."  *Id.*

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)      "Defendant, Markel American Insurance Company's, Amended Motion to

Dismiss or Alternatively, Motion for Summary Judgment" (Doc. 59) is

**DENIED**.

(2)     "Plaintiff VFS Leasing Co.'s Amended Combined Response to Markel

American's Motion for Summary Judgment and Cross-Motion for Summary

Judgment" (Doc. 64) is **GRANTED**.

(3)     The Clerk is directed to enter judgment in favor of Plaintiff VFS Leasing

Co., and against Defendant Markel American Insurance Company, on Count I of

the amended complaint in the amount of $573,404.32.

(4)     Following the entry of judgment, the Clerk is directed to terminate any

pending motions or deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>31st</u> day of

August, 2022.


_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**